UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

COMMERCIAL FINANCIAL SERVICES, INC.,
by Lloyd T. Whitaker, Trustee of the ABS
Liquidating Trust, Representative and
Attorney-in-Fact for Commercial Financial
Services, Inc.,

                              Plaintiff,                    02 Civ. 7168 (RPP)

        - against -                                         **OPINION AND ORDER**

GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK, OHIO CASUALTY INSURANCE
COMPANY, AND WESTCHESTER FIRE
INSURANCE COMPANY,

                              Defendants.
-------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Defendants Great American Insurance Company of New York ("Great American") and

Ohio Casualty Insurance Company ("Ohio Casualty"), joined by Westchester Fire Insurance

Company ("Westchester Fire"), issuers of umbrella and excess liability insurance coverage to

Plaintiff, Commercial Financial Services, Inc. ("CFS"), move to dismiss the First Amended

Complaint ("Am. Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  For the reasons that follow, this motion is denied.

**BACKGROUND**

        The Am. Complaint, which was filed April 5, 2004, sets forth three causes of action:

(1) breach of contract, (2) declaratory judgment, and (3) bad faith failure and refusal to pay.

(Am. Compl. ¶¶ 55-71.)  This action arises out of the failure of Defendants Great American and

Westchester Fire to pay certain insurance claims, which CFS alleges were covered under the

umbrella and excess insurance policies these carriers issued to CFS. (Id. ¶¶ 1, 3.) Defendants Great American and Ohio Casualty move to dismiss pursuant to Rule 12(b)(6) on the ground that the CFS "has failed to state a cause of action against [them] that can be supported in good faith under the law or facts." (Great American Mem. ("GA Mem.") at 1.) Defendant Westchester Fire moves to dismiss the Am. Complaint, pursuant to Rule 12(b)(6), "because CFS has failed to allege any cause of action under which relief may be granted in its favor." (Westchester Fire Mem. at 10.)

A. **The Amended Complaint**[1]

1. Parties

Plaintiff CFS is a corporation organized under the laws of the State of Oklahoma, with its principal place of business in Tulsa, Oklahoma. (Am. Compl. ¶ 9.) On December 11, 1998, CFS filed for protection in the United States Bankruptcy Court for the Northern District of Oklahoma and became a debtor and debtor-in-possession under the United States Bankruptcy Code. (Id.) Pursuant to the September 14, 2001 Order of the United States Bankruptcy Court for the Northern District of Oklahoma, which confirmed CFS's Second Amended Plan of Orderly Liquidation (the "Plan"), Lloyd T. Whitaker, a citizen of the State of Georgia, is the duly-appointed sole Trustee of the ABS Liquidating Trust, a trust established pursuant to that Plan. (Id. ¶ 10.) Prior to filing for bankruptcy protection, CFS was in the business of purchasing and selling non-performing loans and, at its peak, was the largest purchaser and servicer of defaulted credit card receivables in the world. (Id. ¶¶ 2, 21.)

Defendant Great American is a New York corporation, has its principal place of business in Cincinnati, Ohio, and resides in New York.[2] (Id. ¶ 12.) Defendant Ohio Casualty, which is

named as a Defendant because, "upon information and belief," it purchased the commercial lines

of Great American in 1998, including the policy at issue in this matter, is an Ohio corporation,

which resides in Ohio and has its principal place of business in Fairfield, Ohio.  (Id. ¶¶ 8, 14.)

Defendant Westchester Fire is a New York corporation, which resides in New York and has its

principal place of business in Philadelphia, Pennsylvania.  (Id. ¶ 16.)

    2. Facts

CFS obtained a number of insurance policies to protect itself from the risks associated

with its business through a local Tulsa insurance agency, Chandler, Frates & Reitz, now known

as CFR, Inc. ("Chandler Frates").  (Id. ¶ 22.)  In the fall of 1995, Chandler Frates first obtained

primary coverage for CFS from American International Specialty Lines Insurance Company

("AISLIC") in the form of a policy of Bankers Professional Liability Insurance (the "BPL

Policy").  (Id. ¶¶ 3, 23.)  On October 4, 1997, AISLIC issued the BPL Policy number 244-04-01,

and on October 4, 1998, issued a renewal of the BPL Policy number 244-34-23, which had an

aggregate coverage limit of $5 million.  (Id. ¶ 26.)  The BPL Policy covered CFS for claims

arising out of its rendering or failure to render professional services, which, as defined by the

BPL Policy, included "[t]he servicing of any loan, lease or extension of credit."  (BPL Policy

No. 244-34-23, Endorsement 1, attached as Ex. 12 to Pl.'s App. Vol. II, submitted Jan. 21, 2003

("Pl.'s App. Vol. II").)

Great American issued CFS an umbrella insurance policy, number UMB 8-52-26-68-05,

with a $50 million aggregate limit for the policy period from March 5, 1998 to March 5, 1999,

---

[1] The facts that follow are taken from the Am. Complaint and the documents incorporated by
reference.  For the purposes of this motion, these facts are assumed to be true.

[2] The Am. Complaint alleges "[u]pon information and belief, [Great American] has also been
known as American National Fire Insurance Company, the name of the Great American company that
appears on the policies at issue."  (Am. Compl. ¶ 12.)  The policies at issue are referred to as the "Great
American policies" throughout the Am. Complaint and in this opinion.

which did not list the BPL Policy as underlying insurance.  (Am. Compl. ¶ 27.)  In May of 1998, Great American "reissued" policy number UMB 8-52-26-68-06 to CFS, with a policy period from May 14, 1998 to March 5, 1999 (the "Reissued Policy"), which stated its limits of "$50,000,000 Each Occurrence, $50,000,000 General Aggregate (Where Applicable) and $50,000,000 Products-Completed Operations Aggregate."  (Id. ¶ 28.)  "On information and belief," Chandler Frates stated that the reason for the Reissued Policy was to reflect the addition of CFS Kids, a daycare center, and CFS Camp to the policy.  (Id.)  This Reissued Policy provides that in the event of exhaustion, the policy will continue in force as "underlying insurance but for no broader coverage than is available under this policy."  (Id. ¶ 29.)

The Great American policy issued for the March 5, 1998 to March 5, 1999 period limited "underlying insurance" to policies "shown in the Declarations or endorsed to this policy," while the Reissued Policy defines "Underlying Insurance" as "the insurance coverage provided under the policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing . . . ."[3]  (Id. ¶ 30 (emphasis in original and internal quotation marks omitted).)  The Great American policies expressly exclude liability for any claims

> arising out of or related to any actual or alleged act, error, omission, mistake or breach of duty, by or on behalf of any "Insured" in the performing or failure to perform banking or fiduciary services, or in giving financial, economic or investment advice, or out of the rendering of or failure to render any investment, advisory or management services . . . .

(Pl.'s App. Vol. II Ex. 15, Reissued Policy, Financial Institutions Limitation ¶ 3.)

---

[3] The Reissued Policy also provides in a section titled "Conditions" the following provision:
E. Changes
       Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.
(Pl.'s App. Vol. II Ex. 15, Reissued Policy at 11.)

Also, in the section "Professional Liability Coverage-Following Form," the following is expressly excluded:

> Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service, <u>except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance</u>, and for no broader coverage than is provided by such policy.

(Pl.'s App. Vol. II Ex. 15, Reissued Policy, Professional Liability Coverage-Following Form (emphasis added).) Great American's Reissued Policy does not include the BPL Policy on its Schedule of Underlying Insurance. (See Pl.s' App. Vol. II Ex. 15, Reissued Policy, Schedule A-Schedule of Underlying Insurance.)

Westchester Fire issued an excess and umbrella insurance policy, number HXA-645856-0 ("Westchester Fire Policy"), with a policy period April 7, 1998 to March 5, 1999, which defines "underlying insurance . . . as liability as provided by Great American Insurance Company." (Id. ¶ 35; Pl.'s App. Vol. II Ex. 13, Westchester Fire Policy.) The Westchester Fire Policy "follows form" to the Great American policies and "provides stated limits of $50,000,000 for Each Occurrence and $50,000,000 Aggregate (Where Applicable) excess of the underlying Great American $50 million limits." (Am. Compl. ¶ 35.)

On Wednesday, December 9, 1998, an employee of Chandler Frates sent a fax to CFS ("December fax"), with the subject line "RE: Excess Umbrella Policy #HXA-645856-0," which is the Westchester Fire Policy, and attached "a copy of the excess policy" and a document bearing the title, "Commercial Financial Services, Inc. Schedule of Underlying Policies" (the "Chandler Frates Schedule"). (Id. ¶ 31; Pl.'s App. Vol. II Ex. 16.) The Chandler Frates Schedule lists the BPL Policy for October 4, 1997-1998 and October 4, 1998-1999 under this title, along with other policies. (Am. Compl. ¶ 31; Pl.'s App. Vol. II .Ex. 16.) The fax, in relevant part, states:

5

> I've attached a copy of the excess policy for you. I know you probably can't read it very well so I'll put the original in the mail to you. I've also attached a copy of the information I came up with for the Umbrella and Excess Umbrella carriers regarding underlying policy information. This is not a complete list of all of your policies-only the liability policies that the Umbrella's [sic] would go over."

(Pl.'s App. Vol. II Ex. 16)  The December fax also includes the address for Westchester Fire. (Id.)  The December fax and the Chandler Frates Schedule were maintained in CFS's records in a binder with the original of the Westchester Fire policy.  (Am. Compl. ¶ 31.)

Earlier in December 1998, Nations Bank, now known as Bank of America, filed a lawsuit against CFS, and on December 9, 1998, a North Carolina state court issued an ex parte temporary restraining order in favor of Bank of America with respect to approximately $66 million in CFS assets.  (Id. ¶ 37.)  In addition, on December 10, 1998, the holders of CFS Senior Notes declared their notes to be in default, accelerated their debt, and declared their intention to file an involuntary bankruptcy petition against CFS.  (Id.)  On Friday, December 11, 1998, CFS filed for protection in the United States Bankruptcy Court for the Northern District of Oklahoma. (Id. ¶ 2.)

On December 14, 1998, Cooney, Rikard & Curtin, Inc. ("CRC"), the wholesale agency through which Chandler Frates had obtained the Great American policies, "on information and belief" faxed a letter and forwarded a copy of the Chandler Frates Schedule to Great American.[4] (Id. ¶ 32.)  The Amended Complaint alleges that the fax lines on the copy of the Chandler Frates Schedule indicate that Chandler Frates had sent the schedule to CRC on December 4, 1998.  (Id.) The December 14, 1998 letter states:

> Attached please find a copy of correct underlying information.  Other than changing policy numbers and dates, I really don't see anything except the CGL on Security

---

[4] The forwarded Chandler Frates Schedule includes some marks that were not present on the copy that accompanies the December fax.  Question marks appear next to both the Commercial General Liability-Security Guards and Bankers Professional Liability listings.  (See Pl.'s App. Vol. II Ex. 17.)

Guards and Bankers Professional Liability. I assume you can not include the Bankers Professional but what about the security guard. Please let me know.

(Id. ¶ 32; Pl.'s App. Vol. II Ex. 17.) The response, if any, from Great American is not known.

(Am. Compl. ¶ 32.)

As to the relationship between Great American and Chandler Frates, the Am. Complaint

alleges:

> On information and belief, [Chandler Frates] was permitted to act as Great American's agent. Notwithstanding any language in its formal contract documents to the contrary, [Chandler Frates] had actual and apparent authority to bind Great American, agree to a schedule of underlying insurance, and forward such information to CFS. Great American did not communicate directly with CFS on insurance issues, but allowed [Chandler Frates] to countersign policies and to communicate all information regarding Great American's insurance to CFS. [Chandler Frates'] Chairman Jack H. Allen, Jr. signed numerous binders and other policy documents as Great American's "Authorized Representative." Upon information and belief, an affiliated Great American company website identifies [Chandler Frates] as one of its Tulsa agents.[5]

(Id. ¶ 33.)

The Am. Complaint alleges that the "Great American Reissued Policy, by virtue of the

December 1998 fax and [Chandler Frates] Schedule, included the BPL Policy as 'underlying

insurance' at the time when claims covered by the BPL Policy were made against CFS and when

CFS filed for bankruptcy protection." (Id. ¶ 34.)

CFS's files contain an amended version of the Reissued Policy effective as of February 2,

1999, which does not include the BPL Policy on its schedule of underlying policies. This policy

bears a countersigned date of March 26, 1999, next to the stamped signature of Chandler Frates'

Chairman Jack H. Allen, Jr. on the authorized representative signature line. There is a

---

[5] The website is for Mid-Continent, which is a member of the Great American Insurance Group. Mid-Continent offers auto insurance, home-business owner insurance, inland marine, surety bond and commercial lines. (Great American's Notice of Mot. Ex. R.)

handwritten notation on the face of the document describing the amended policy as a change that "[d]eletes CFS Kids." (Id. ¶ 36; Pl.'s App. Vol. II Ex. 24.)

Various claims were asserted against CFS in federal district, bankruptcy and state court. (Am. Compl. ¶ 37.) The Bankruptcy Court, by its order on September 14, 2001, confirmed the Plan, pursuant to which covered claims totaling $1,610,133,452.65 were allowed against the CFS estate. (Id. ¶ 38.) On September 17, 2001, by a settlement of the coverage litigation against AISLIC, which the Bankruptcy Court approved, "AISLIC paid the $5 million 'aggregate limits' of the BPL Policy." (Id. ¶ 39.) The order approving settlement specified that the BPL Policy limits had been exhausted by the payment of policy limits. (Id.)

On information and belief, Great American and Westchester Fire were informed of pertinent developments in the bankruptcy proceeding. (Id. ¶ 40.) Ohio Casualty was on the original Creditors Listing (or Matrix) in the bankruptcy case, and on information and belief, therefore received notice of the bankruptcy filing and of major events in the bankruptcy case. (Id.) Also, in June 2001, James Danehy, a representative of Ohio Casualty, stated in a letter to CRC that he did not believe Great American was liable for CFS's claims because the claims would not reach Great American's limits. (Id. ¶ 43.)

On June 6, 2002, demand was made upon Great American and Westchester Fire for payment of their full policy limits, plus interest and defense costs. (Id. ¶ 42.) On June 24, 2002, CFS received a letter from Mr. Danehy, which stated that Ohio Casualty had no knowledge or information regarding the claims. (Id. ¶ 43.) On July 22, 2002, CFS responded to this letter and again requested an immediate coverage determination, and on July 25, 2002, wrote a similar letter to Great American. (Id. ¶ 44.) On July 31, 2002, Mr. Danehy acknowledged CFS's July 25, 2002 letter to Great American, but provided no substantive response to CFS's prior letters.

Mr. Danehy's letter instead referred CFS to his June 24, 2002 letter, which stated that after it had sufficient information, Ohio Casualty would discuss Great American's and/or Ohio Casualty's further involvement.  (Id. ¶ 45.)

On August 8, 2002, CFS provided Ohio Casualty with additional copies of materials previously provided to Great American and again demanded an immediate coverage determination.  (Id. ¶ 46.)  On August 26, 2002, CFS again wrote Ohio Casualty, stating that it had not received a substantive response or coverage determination from Great American or Ohio Casualty.  (Id. ¶ 47.)  On August 29, 2002, CFS's counsel was advised by Mr. Danehy's office at Ohio Casualty that the policies, file and information previously sent to him had been forwarded to Robert Wright, another representative of Ohio Casualty.  That same day, Mr. Wright advised that he was not familiar with CFS's claim and the materials produced to date and asked for access to certain of CFS's files.  By letter dated September 5, 2002, CFS's counsel agreed to provide Mr. Wright with appropriate additional information but noted that his request should not serve as a reason to delay further a coverage determination.  (Id. ¶ 48.)  Great American never asserted that the BPL Policy was not scheduled underlying insurance.  (Id. ¶ 49.)

By letter dated July 20, 2001, Westchester Fire responded to CFS's claim by reserving its rights, noting its position as an excess carrier, and requesting copies of correspondence with the underlying carrier denying, disclaiming or reserving rights.[6]  (Id. ¶ 50.)  In August 2001, CFS, through counsel, forwarded correspondence from AI Management and Professional Liability Claims Adjusters and D'Amato & Lynch, representing AISLIC and the other AIG defendant in the coverage litigation.  (Id.)  Westchester Fire essentially repeated the position set forth in the July 20, 2001 letter in letters dated September 6, 2001, December 19, 2001, and June 11, 2002.

(Id. ¶ 51.)  On June 11, 2002, Westchester Fire responded to CFS's demand letter by asking for Great American's coverage position but did not state its own.  (Id. ¶ 52.)  On July 22, 2002, CFS informed Westchester Fire that it had never heard from Great American directly on its claims, but had received a June 4, 2002 letter from Ohio Casualty, which did not state a coverage position.  CFS again requested an immediate coverage determination from Westchester Fire.  (Id. ¶ 53.)  Westchester never provided a coverage determination and never contended that the BPL Policy was not underlying insurance.  (Id. ¶ 54.)

## B.  **Procedural Posture**

The original Complaint in this action was filed on September 9, 2002.  On November 8, 2002, Defendants moved to dismiss the original Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because, among other grounds, the BPL Policy was not listed in the Schedule of Underlying Insurance in any of the Great American policies.  Commercial Fin. Servs., Inc. v. Great American Ins. Co., No. 02 Civ. 7168, 2003 WL 21373237, at *2 (S.D.N.Y. June 13, 2003).  In answer, Plaintiff CFS asserted that: (1) the Chandler Frates Schedule listed the BPL Policy as underlying insurance; (2) Great American's agent had delivered this Schedule to CFS; and (3) CFS had relied upon Chandler Frates' representation that the BPL Policy was included in the Great American's Schedule of Underlying Policies.  (Pl.'s Mem in Opp'n to Mot. to Dismiss Complaint, dated Dec. 4, 2002, at 1, 6, 7 n.5.)  After allowing limited discovery, this Court, in an opinion and order entered June 13, 2003, dismissed with leave to amend the original Complaint "if [CFS made] an application to the Court within thirty

---

[6] From the Am. Complaint, it is unclear when or how CFS made the claim upon Westchester Fire to which Westchester Fire is responding.

days demonstrating that it ha[d] evidentiary grounds[7] to believe that CFS did rely on the [Chandler Frates Schedule]."[8]  Commercial Fin. Servs., Inc., 2003 WL 21373237, at *9.

On June 25, 2003, prior to a June 30, 2003 hearing ordered by the Court, CFS's counsel, Latham & Watkins, LLP, Richard A. Conn, Jr., Esq. and D. Benjamin Barros, Esq., made a submission in which they stated they "retract and withdraw any and all representations previously submitted to the Court to the effect that Mr. Steve Berry or CFS relied on the [Chandler Frates Schedule] as evidence of CFS having umbrella coverage."  (Memo Endorsed Submission of Latham & Watkins, LLP, Richard A. Conn, Jr., Esq. and D. Benjamin Barros, dated June 25, 2003, attached as Ex. O to Great American's Notice of Mot.)

Based on CFS's counsel's submission, the Court dismissed the original Complaint, with prejudice, in a June 26, 2003 Memo Endorsed Order.  (Great American's Notice of Mot. Ex. O.) A judgment in favor of Defendants was entered on June 30, 2003.  (Great American's Notice of Mot. Ex. P.)

On appeal, the Second Circuit issued a summary order which modified the Court's decision solely by affording CFS the opportunity to file an amended complaint, and otherwise affirmed this Court's decision.  (Great American's Notice of Mot. Ex. Q.)

**DISCUSSION**

**A.  <u>Standard of Review</u>**

---

[7] In accordance with an earlier order of the Court, prior to oral argument on the Defendants' motion to dismiss the original Complaint in this matter, Great American and Ohio Casualty had turned over to CFS Great American's entire underwriting file as well as the 10,000 pages of documents CFS had sent to them.  (Transcript dated December 20, 2002, at 18.)  CFS also had cooperation in discovery from Great American, Ohio Casualty and Chandler Frates.

[8] The original Complaint in this matter contained no allegations claiming: "(1) the amendment of any of the Great American policies; (2) that [CFS] relied on the 'Schedule of Underlying Policies' received from Chandler Frates on December 9, 1998; or that (3) Chandler Frates had authority or apparent authority to issue binders for Great American."  Commercial Fin. Servs., Inc., 2003 WL 21373237, at *7.

In reviewing a motion to dismiss under Rule 12(b)(6), a court must limit its review to the complaint and documents attached or incorporated by reference. Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000). Thus, this Court will review the Am. Complaint and the following documents incorporated by reference: copies of (1) the relevant insurance policies, (2) the December fax and accompanying Chandler Frates Schedule, and (3) the December 14, 1998 letter from CRC to Great American and accompanying copy of the Chandler Frates Schedule.

A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Id. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation marks omitted). A court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted).

## B. **Choice of law**

In an action based on diversity jurisdiction in federal courts in New York, such as in this case, the choice of law analysis is done applying New York law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New York choice of law rules require courts to apply the law of the state that has the most "significant contacts with the matter in dispute." Auten v. Auten, 308 N.Y. 155, 160-61 (1954); see also Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 226-27 (1993); Babcock v. Jackson, 12 N.Y.2d 473, 481 (1963) (stating the "controlling effect" must be given to the jurisdiction that, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

In the context of insurance contracts, New York courts have principally examined the following factors: "the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." Olin Corp. v. Ins. Co. of North America, 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991); see also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994).

Examining the relevant factors, Oklahoma law governs this action. The policies in the instant case were issued to CFS, whose principal place of business was located in Tulsa, Oklahoma. (Am. Compl. ¶ 9.) Chandler Frates, the alleged agent through which CFS purchased Great American's Reissued Policy, is located in Tulsa, Oklahoma. (Id. ¶ 22.) The insurers' principal places of business were in Ohio and Pennsylvania. (Id. ¶¶ 12, 14, 16.) Thus, Oklahoma is the state with the most "significant contacts with the matter in dispute." See Auten, 308 N.Y. at 160.

## C. **Breach of Contract**

Defendants argue that the Am. Complaint must be dismissed because the BPL Policy is not covered under the umbrella and excess policies issued by them, and therefore, they are not liable to CFS for any damages. Specifically, Defendants contend that: (1) the BPL Policy was not included in the Schedule of Underlying Insurance for Great American's Reissued Policy, and the December fax and Chandler Frates Schedule were not "making any representation to CFS of existing coverage or providing an existing binder of coverage" (GA Mem. at 19); (2) Chandler Frates did not have the actual or apparent authority to bind Great American to the terms of the December fax and Chandler Frates Schedule (id.; Westchester Fire Mem. at 16-20); and (3) even if the BPL Policy was included in the Reissued Policy's Schedule of Underlying Insurance, the

losses suffered by CFS are expressly excluded by provisions in the Reissued Policy (GA Mem. at 17-18).

    1.  <u>Amendment of Great American's Reissued Policy</u>

CFS claims that the BPL Policy was underlying insurance to the umbrella and excess policies issued to CFS by Great American and Westchester Fire, even though these policies do not include the BPL Policy on their Schedules for Underlying Insurance because "[t]he Great American Reissued Policy, <u>by virtue</u> of the December 1998 fax and [Chandler Frates] Schedule, included the BPL Policy as 'underlying insurance' at the time when claims covered by the BPL Policy were made against CFS and when CFS filed for bankruptcy protection."  (Am. Compl. ¶ 34 (emphasis added).)  Great American's Reissued Policy defines "Underlying Insurance" as "the insurance coverage provided under the policies shown in the Schedule of Underlying Insurance, <u>or any additional policies agreed to by us in writing</u> . . . ."  (<u>Id.</u> ¶ 30 (emphasis in original and internal quotation marks omitted).)  CFS argues that the December fax and Chandler Frates Schedule "constitute an amendment to the [Reissued] policy."  (Transcript of Oral Argument, dated Feb. 14, 2005, at 23, 27, 45.)  Defendants maintain that "on its face, [the December fax] was not making any representation to CFS of existing coverage or providing an existing binder of coverage" and that "the faxed schedule itself indicates that at best it is a status report of the work being performed on the listed insurance policies" by Chandler Frates.  (GA Mem. at 19.)

Assuming that Chandler Frates, through an agency relationship with Great American, had the authority to bind Great American and drawing all reasonable inferences in favor of CFS, the December fax and Chandler Frates Schedule may, dependent upon fact discovery, constitute an amendment to the Reissued Policy.  Although the December fax and Chandler Frates Schedule

may be read not to amend Great American's Reissued Policy, neither these documents, nor any other documents referenced in the Am. Complaint conclusively foreclose the possibility that Great American's Reissued Policy had been amended to include the BPL Policy.  Thus, it is not "beyond a doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Conley, 355 U.S. at 45-46.

2.  Chandler Frates' Authority to Bind Great American

The Amended Complaint alleges that:

> On information and belief, [Chandler Frates] was permitted to act as Great American's agent.  Notwithstanding any language in its formal contract documents to the contrary, [Chandler Frates] had actual and apparent authority to bind Great American, agree to a schedule of underlying insurance, and forward such information to CFS.  Great American did not communicate directly with CFS on insurance issues, but allowed [Chandler Frates] to countersign policies and to communicate all information regarding Great American's insurance to CFS.  [Chandler Frates'] Chairman Jack H. Allen, Jr. signed numerous binders and other policy documents as Great American's "Authorized Representative." Upon information and belief, an affiliated Great American company website identifies [Chandler Frates] as one of its Tulsa agents.

(Am. Compl. ¶ 33.)

Defendants argue that Chandler Frates did not have actual or apparent authority to bind Great American to any amendment of the umbrella policy and that CFS's conclusory allegation of agency is insufficient.  (GA Mem. at 19-23; Westchester Fire Mem. at 16-20.)  Defendants cite case law to support their argument that CFS must allege facts that form the basis of actual or apparent authority, but none of the cited cases involved a motion to dismiss.  (See GA Mem. at 19-23; Westchester Fire Mem. at 16-20 (citing Willis v. Midland Risk Ins. Co., 42 F.3d 607, 613 (10th Cir. 1994) (appeal of summary judgment); Bayless v. Christie, Manson & Woods Int'l, Inc., 2 F.3d 347, 352 (10th Cir. 1993) (appeal of jury trial verdict); Wynn v. Avemco Ins. Co., 963 P.2d 572, 574 (Okla. 1998) (appeal of summary judgment); Enter. Mgmt. Consultants Inc. v.

Oklahoma Tax Comm'n, 768 P.2d 359, 362 (Okla. 1988) (appeal of tax commission order); Elliot v. Mutual Life Ins. Co. of New York, 91 P.2d 746, 747 (Okla. 1939) (appeal of instructed verdict); Lewis v. Central Oklahoma Med. Group, 998 P.2d 202, 204 (Okla. Civ. App. 2000) (appeal of summary judgment); McIntosh v. Vector Properties, Inc., 889 P.2d 911 (Okla. Ct. App. 1995) (appeal of bench trial verdict)).)

This case is at the pleading stage. Although CFS acknowledges that there are formal contract documents contrary to their assertion of actual and apparent authority (Am. Compl. ¶ 33), this does not mean that discovery will not establish that Great American either expressly or impliedly authorized Chandler Frates to include the BPL Policy as underlying insurance. By pleading facts, such as Chandler Frates' countersignatures on policies and Chandler Frates' Chairman Jack Allen's signing documents as "Authorized Representative," CFS has raised a sufficient inference that some sort of agency relationship existed between Chandler Frates and Great American. Accordingly, it is not "beyond a doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley, 355 U.S. at 45-46. Furthermore, there is case law stating that a conclusory allegation of actual or apparent authority is sufficient under the federal pleading rules. Guar. Residential Lending, Inc. v. Int'l Mortgage Center, Inc., 305 F. Supp. 2d 846, 861-62 (N.D. Ill. 2004) (stating that the federal pleading rules do not require more than a conclusory allegation of actual or apparent authority).

Defendants, however, argue that CFS should be judicially estopped from asserting a cause of action based on the apparent authority of Chandler Frates to bind Great American to an amendment of the Reissued Policy by the December fax and Chandler Frates Schedule because of CFS's withdrawal of its previous representations to this Court concerning CFS's reliance on these documents. (GA Mem. at 22-24.)

Under the equitable principal of judicial estoppel, a party is precluded from inequitably adopting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding. Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997). "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted in the first tribunal in some manner, such as by rendering a favorable verdict." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1,6 (2d Cir. 1999) (internal citations and alterations omitted). The purposes of the doctrine are to "preserve the sanctity of the oath" and to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Simon, 128 F.3d at 71 (internal quotation marks omitted). "[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel." Id. at 72-73. Estoppel is also inappropriate when the first statement was the result of a good faith mistake or an unintentional error. Id. at 73.

The original Complaint in this matter, which was dismissed on June 13, 2002, did not allege that Chandler Frates had an agency relationship with Great American that would permit Chandler Frates to bind Great American to any amendment of its insurance policies or that CFS relied on the December fax and Chandler Frates Schedule. Commercial Fin. Servs., Inc., 2003 WL 21373237, at *7. When Defendants moved to dismiss the original Complaint, they argued that the BPL Policy was not listed in the Schedule of Underlying Insurance in any of the Great American policies, and therefore, CFS had no cause of action against them. Id. at *2. In answer, Plaintiff CFS asserted that: (1) the Chandler Frates Schedule listed the BPL Policy as underlying insurance; (2) Great American's agent had delivered this Schedule to CFS; and (3) CFS had relied upon the representation in the Chandler Frates Schedule and therefore believed that the

BPL Policy was included in Great American's Schedule of Underlying Policies. (Pl.'s Mem. in Opp'n to Mot. to Dismiss Complaint, dated Dec. 4, 2002, at 1, 6, 7 n.5.)

To support these arguments, CFS's counsel, Mr. Barros and Mr. Conn, submitted to the Court, respectively, an affirmation dated December 4, 2002, and a declaration dated January 21, 2003, in which they stated, under penalty of perjury, that Mr. Berry, a CFS employee who obtained insurance coverage for CFS, relied on the December fax and Chandler Frates Schedule as an indication that the BPL Policy was covered under Great American's Reissued Policy. (See Affirmation of D. Benjamin Barros, Esq., dated Dec. 4, 2002, ¶ 4; Declaration of Richard A. Conn, Esq., dated Jan. 21, 2003, ¶ 5; see also Commercial Fin. Servs., Inc., 2003 WL 21373237, at *2, *5.) However, Mr. Berry's statements, submitted to this Court by CFS and Defendants, failed to support counsels' representations. Commercial Fin. Servs., Inc., 2003 WL 21373237, at *3, *6. The Court scheduled a Rule 11 evidentiary hearing to determine whether CFS's counsel had a good faith basis on which to base their claim of reliance by Mr. Berry and CFS. Id. at *11.

Prior to the hearing, CFS's counsel made a submission, in which they stated they:

retract and withdraw any and all representations previously submitted to the Court to the effect that Mr. Steve Berry or CFS relied on the December 9, 1998 "Schedule of Underlying Policies" as evidence of CFS's having umbrella coverage applicable to the Umbrella and Excess Policies issued by Great American Insurance Company of New York and Westchester Fire Insurance Company.

(Great American's Notice of Mot. Ex. 0, ¶ 2.) The Court accepted this submission and based its decision to cancel the scheduled Rule 11 hearing and dismiss the case upon this submission. (Great American's Notice of Mot. Ex. P.) This decision was upheld on appeal.

The subsequent Am. Complaint alleges that Chandler Frates "had actual and apparent authority to bind Great American." (Am. Compl. ¶ 33.) Under Oklahoma law, "[t]o establish apparent authority, a plaintiff must show: 1) such authority as the principal knowingly permits

the agent to assume or which it holds the agent out as possessing; 2) reliance thereon by the plaintiff; and, 3) change of position by plaintiff to her detriment." Lewis, 998 P.2d at 204. Since, under Oklahoma law, reliance by the plaintiff is an essential element of a cause of action based on apparent authority, the allegation that Chandler Frates had the apparent authority to bind Great American to an amendment of its Reissued Policy's Schedule of Underlying Insurance suggests that CFS may also be reasserting its prior claim that it relied upon the Chandler Frates Schedule as a representation of CFS's coverage under the Reissued Policy, including the BPL Policy on the Schedule of Underlying Insurance.

Reassertion of reliance by CFS on the Chandler Frates Schedule as a representation of CFS's coverage under the Reissued Policy would be contradictory to its previous withdrawal of that position. To protect judicial integrity and the sanctity of the oath, Plaintiff CFS is estopped from asserting that CFS relied on the December fax and Chandler Frates Schedule and from asserting a cause of action under Oklahoma law based on CFS's reliance upon these documents.

However, CFS is not judicially estopped from alleging and proving that Chandler Frates had actual authority, express or implied, to bind Great American. Since a conclusory allegation of actual authority, express or implied, is sufficient under the federal pleading rules and, as stated above, CFS alleges some facts that may, depending on the facts and circumstances developed, raise the reasonable inference that Chandler Frates had the authority to act on behalf of Great American to amend the Schedule of Underlying Insurance, the allegation of a cause of action based on actual authority is sufficiently pled. Therefore, Defendants' motions to dismiss the Am. Complaint on this ground is denied.[9]

---

[9] CFS should not be prejudiced by this ruling because CFS's theory is that due to the relationship between Great American and Chandler Frates, the December fax and Chandler Frates Schedule constituted an amendment to the Reissued Policy sufficient to create liability for the Defendants and that

3. Coverage under the Umbrella and Excess Policies

The Am. Complaint alleges that in the settlement with AISLIC, that company paid the $5 million "aggregate limits" of the BPL Policy and that the order approving settlement specified that the BPL Policy limits had been exhausted by the payment of the policy limits. (Am. Compl. ¶ 39.) Based on the face of the Amended Complaint, the types of damages being claimed by CFS were within the scope of the BPL Policy. Also, the Am. Complaint alleges that CFS was "in the business of purchasing and selling nonperforming loans," and servicing such loans (Am. Compl. ¶¶ 2, 21), and the BPL Policy provides for coverage of claims arising out of CFS's rendering or failure to render professional services, which includes "[t]he servicing of any loan, lease or extension of credit," (Pl.'s App. Vol. II Ex. 12, BPL Policy, Endorsement 1).

Defendants argue that the Am. Complaint should be dismissed because, even if the BPL Policy served as underlying insurance to their policies, the damages asserted by CFS would not be covered under the umbrella and excess policies because of the Reissued Policy's "financial institutions" exclusion. (GA Mem. at 17-18.) This provision excludes claims

> arising out of or related to any actual or alleged act, error, omission, mistake or breach of duty, by on behalf of any 'Insured' in the performing or failure to perform banking or fiduciary services, or in giving financial, economic or investment advice, or out of the rendering of or failure to render any investment, advisory or management services . . . .

(Pl.'s App. Vol. II Ex. 15, Reissued Policy, Financial Institutions Limitation ¶ 3.) The Reissued Policy, however, contains another endorsement, titled "Professional Liability Coverage-Following Form," which appears to provide coverage for the BPL Policy if it is listed in the Schedule of Underlying Insurance. The "Professional Liability Coverage-Following Form" reads:

---

it is not necessary to show that CFS subjectively relied on these documents. (Tr. dated Feb. 14, 2005, at

The following exclusion is added to Section IV-Exclusions:  Any liability for, caused by, or arising out of, or in connection with the rendering of or failure to render any professional service, <u>except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance</u>, and for no broader coverage than is provided by such policy.

(Pl.'s App. Vol. II Ex. 15 Reissued Policy (emphasis added).)

Reading the exclusions narrowly and interpreting any ambiguity in the Reissued Policy against Great American, it is not clear that CFS's claims would be subject to exclusion under the Reissued Policy.  See <u>Littlefield v. State Farm Fire & Casualty Co.</u>, 857 P.2d 65, 69 (Okla. 1993) (stating that Oklahoma law provides that any inconsistencies or ambiguities in a policy must be read against the carrier); <u>An-son Corp. v. Holland-America Ins. Co.</u>, 767 F.2d 700, 703 (10th Cir. 1985) (stating that exclusions from coverage are to be construed narrowly so as to promote coverage in favor of the insured).  Thus, Defendants' motions to dismiss on this ground are denied.

## D.  <u>Bad Faith Failure and Refusal to Pay</u>

"Under Oklahoma law, an insurer has a legal duty to deal fairly and act in good faith with its insureds." <u>Vining v. Enter. Fin. Group, Inc.</u>, 148 F.3d 1206, 1213 (10th Cir. 1998) (internal quotation marks omitted).  If an insurer breaches this duty, the insured may bring a cause of action in tort for bad faith.  <u>Id.</u>  An insurer does not breach this duty "by litigating a dispute with its insured if there is a legitimate dispute as to coverage or amount of the claim and the insurer's position is reasonable and legitimate."  <u>Id.</u> (internal quotation marks omitted).

Defendant Great American contends that there is a legitimate dispute as to whether coverage exists and, therefore, the claim for bad faith must be dismissed.  (GA Mem. at 24.)  However, under Oklahoma law, a legitimate dispute as to coverage does not function as an

44-45.)

"impenetrable shield against a valid claim of bad faith" when the insured presents "sufficient evidence reasonably tending to show bad faith or unreasonable conduct. <u>Vining</u>, 148 F.3d at 1214 (internal quotation marks omitted). Thus, "a plaintiff may bring a bad faith cause of action even though a legitimate defense to a breach of contract claim exists if the defendant did not actually rely on that defense to deny payment under the policy." <u>Id.</u>

Under Oklahoma law, when an insured presents a claim, the insurer has a duty to make an "investigation reasonably appropriate under the circumstances," to determine whether the policy covers the claim and the value of the claim. <u>Newport v. USAA</u>, 11 P.3d 190, 195 (Okla. 2000); <u>see also</u> <u>First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.</u>, 928 P.2d 298, 304 (Okla. 1996). "An inadequate investigation by the insurance company may give rise to an inference of bad faith, requiring the question to be determined by a jury." <u>Hall v. Globe Life & Accident Ins. Co.</u>, 968 P.2d 1263, 1265 (Okla. Civ. App. 1998).

Drawing all reasonable inferences in favor of Plaintiff CFS and accepting all of the factual allegations in the Am. Complaint as true, the Am. Complaint alleges facts which may, dependent on the circumstances, raise a reasonable inference of bad faith on the part of Great American, Ohio Casualty and Westchester Fire under Oklahoma law. The Am. Complaint alleges that CFS made demand upon Great American and Westchester Fire, including by letter dated June 6, 2002, (Am. Compl. ¶ 42), and that Great American and Westchester Fire had knowledge of the claim in, respectively, June 2001 and July 2001 (<u>id.</u> ¶¶ 43, 50), and did not make a coverage determination by September 2002 (id. ¶¶ 48, 54). Accordingly, Defendants' motions to dismiss the bad faith claim are denied.

**E.  <u>Motion to Tax Costs</u>**

On July 7, 2003, prior to the appeal from this Court's June 26, 2003 dismissal of the

original Complaint with prejudice, Defendants Great American and Ohio Casualty moved for costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Local Rule 54.1, and 28 U.S.C. §§ 1920(3) and 1927 for the avoidable duplication of fees and attorneys' fees and disbursements incurred by these Defendants after the hearing on the Motion to Dismiss held on December 20, 2002.  (GA Mem. at 25.)  This motion was previously adjourned pending the outcome of the appeal by CFS.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To impose sanctions against an attorney or a person acting as an attorney under § 1927, a court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  Agee v. Paramount Communications, Inc., 114 F.3d 395, 398 (2d Cir. 1997); see also MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996) (stating that § 1927 requires a showing of subjective bad faith).  "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).  This Court denies Defendants Great American and Ohio Casualty's motion for attorneys' fee as costs against counsel for CFS under § 1927 because the Court does not find that counsel for CFS "unreasonably and vexatiously" multiplied the proceedings in the matter.  This Court grants Defendants Great American and Ohio Casualty's motion for taxation of costs under 28 U.S.C. § 1920(3) in connection with the prior dismissal of this action.

American and Ohio Casualty's motion for attorneys' fee as costs against counsel for CFS under § 1927 because the Court does not find that counsel for CFS "unreasonably and vexatiously" multiplied the proceedings in the matter. This Court grants Defendants Great American and Ohio Casualty's motion for taxation of costs under 28 U.S.C. § 1920(3) in connection with the prior dismissal of this action.

**CONCLUSION**

For the reasons set forth above, it is not "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief," <u>Conley</u>, 355 U.S. at 45-46, and, therefore, Defendants' motions to dismiss are denied. However, CFS is judicially estopped from asserting a cause of action under Oklahoma law based on CFS's reliance upon the December fax and Chandler Frates Schedule. In view of voluntary discovery already afforded to CFS, CFS's discovery shall be completed by 10/7/05; a joint pre-trial order shall be filed by 10/31/05; and trial is scheduled for 11/14/05.

IT IS SO ORDERED.

Dated: New York, New York
     August _5_, 2005

                                  Robert P. Patterson, Jr.
                                       U.S.D.J.

Copies of this Opinion and Order sent to:

Counsel for Plaintiff Commercial Financial Services, Inc.

> Latham & Watkins LLP
> 555 Eleventh St., N.W.
> Washington, D.C. 20004
> By: Richard A. Conn, Jr., Esq.
> Tel:    202-637-2200
> Fax:    202-637-2201

> Latham & Watkins LLP
> 885 Third Avenue
> New York, NY 10022-4802
> By:     Walter P. Loughlin, Esq.
> Tel:    212-906-1200
> Fax:    212-751-4864

> Kilpatrick Stockton LLP
> 1100 Peachtree St., Suite 2800
> Atlanta, GA 30309
> By:     Caroline W. Spangenberg, Esq.
> Tel:    404-815-6500
> Fax:    404-815-6555

Counsel for Defendant Great American Insurance Company
of New York and Ohio Casualty Insurance Company

> L'Abbate, Balkan, Colavita & Contini, L.L.P.
> One Battery Park Plaza
> New York, NY 10004
> By:     Noah Nunberg, Esq.
> Tel:    212-825-6900
> Fax:    212-825-0657

Counsel for Defendant Westchester Fire Insurance Company

> Lustig & Brown
> 641 Lexington Ave., 28th Fl.
> New York, NY 10022
> By:     James Duggan, Esq.
>         Sherri Robinson, Esq.
> Tel:    212-832-3235
> Fax:    212-832-3155